IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

AARON GRIMES,

       Petitioner,

v.                              CASE NO. 1:20-cv-276-AW-GRJ

SECRETARY, FLA.
DEPT. OF CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Aaron Grimes ("Grimes") initiated this second petition for a

writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"), ECF No. 1, after

the Eleventh Circuit Court of Appeals gave him leave to do so.[1]  *See In re:*

*Aaron Grimes*, No. 20-13188 (11th Cir. 2020), ECF No. 1-2 at 3-15.  The

Petition stems from Grimes's 1997 Alachua County convictions on two

counts of robbery with a firearm, for which Grimes is serving a life

sentence.  ECF No. 1 at 1. The Eleventh Circuit granted Grimes leave to

file a second petition based upon alleged "newly discovery evidence" that

---

[1] Before a petitioner may file a second or successive § 2254 petition challenging the
same conviction, he or she must first obtain an order from the court of appeals
authorizing the district court to consider it.  *Holland v. Sec'y, Fla. Dep't of Corr.*, 941
F.3d 1285, 1287 (11th Cir. 2019) (*citing* 28 U.S.C. § 2244(b)(3)(A)).

purported to show "actual innocence." ECF No. 1. Grimes's newly

discovered evidence is comprised of three affidavits dated 2020. The

affidavits are from Joseph Jenkins ("Jenkins"), who now says he is the

person who committed the armed robbery, as well as the two victims of the

robbery, Quentin Arthur ("Arthur") and Tellas Barnum ("Barnum"), recanting

their trial testimony that Grimes robbed them at gunpoint.[2] ECF No. 1-2 at

22-24.

The Petition sets forth two grounds for relief, both based upon

prosecutorial misconduct. Ground One alleges that Grimes's convictions

were obtained in violation of due process because the prosecution induced

and presented testimony known to be materially false, *Giglio v. United*

*States*, 405 U.S. 150 (1972). ECF No. 1 at 5. Ground Two alleges that

Grimes's convictions were obtained in violation of due process because the

---

[2] "Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves to impeach cumulative evidence rather than to undermine confidence in the accuracy of the verdict." *Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34, 105 S.Ct. 34, 36, 82 L.Ed.2d 925 (1984) (Brennan, J. and Marshall, J., dissenting); *accord United States v. Santiago*, 837 F.2d 1545, 1550 (11th Cir. 1988) (noting that "recantations are viewed with extreme suspicion by the courts") (quoting *Newman v. United States*, 238 F.2d 861, 862 (5th Cir. 1988) (internal quotation marks omitted)). Generally, a witness's recantation of trial testimony justifies a new trial only where the reviewing judge is satisfied that the recantation is true and that it will likely result in a different verdict. *See Dobbert*, 468 U.S. at 1234, 105 S.Ct. at 36 (citation omitted).

prosecutor failed to provide exculpatory material, *Brady v. Maryland*, 373 U.S. 83 (1963).  ECF No. 1 at 7.

After due consideration, the undersigned respectfully **RECOMMENDS** that the Petition should be **DISMISSED as untimely**.  It is further **RECOMMENDED** that the affidavits submitted to the Eleventh Circuit and to this Court in support of the Petition should be **REFERRED** to the United States Attorney for the Northern District of Florida for investigation and possible perjury prosecutions.[3]

## I.    BACKGROUND FACTS

On December 24, 1996, at approximately 9:00 p.m. in Gainesville, Florida, Grimes and an unidentified "light-skinned" African American male robbed Arthur and Barnum at gunpoint.  *See* ECF No. 12-1 at 139, 144. According to both Arthur and Barnum, Grimes pointed a gun at them during

---

[3] The general perjury statute provides that:  "Whoever… in any declaration, certificate, verification, or statement under penalty of perjury…, willfully subscribes as true any material matter which he does not believe to be true… is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both."  18 U.S.C. § 1621.  A statement is material if it has "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it is addressed."  *United States v. Sassanelli*, 118 F.3d 495, 499 (11th Cir. 1997) (citation and internal quotation marks omitted) (concluding that "false affidavit spoke directly to the subject matter of the litigation in which it was offered"; thereby affirming perjury conviction under 18 U.S.C. § 1621).

the hold-up. ECF No. 12-1 at 144, 163.  Stolen items included $20.00 in cash, a Mickey Mouse necklace, and a Georgetown University basketball jacket.  *Id*. at 145, 165.  After the robbery, Grimes and his co-assailant drove away in a car possibly driven by a woman.  *Id*. at 144, 166.  The victims called Gainesville police.  Arthur and Barnum each picked Grimes out of a photo-lineup and identified Grimes as the man with the gun.  *Id*. at 10-13.  Neither victim knew nor identified Grimes's "light-skinned" cohort. ECF No. 12-1 at 144.

On December 25, 2022, Grimes was arrested on two counts of robbery using a firearm and one count of possession of a firearm by a convicted felon.  *Id*. at 10-13.  A jury convicted Grimes of the armed robbery charges on June 11, 1997.  *See Id*. at 316.  On July 31, 1997, Grimes was sentenced as a Habitual Felony Offender to life imprisonment. *Id*. at 336.

After exhausting his state court remedies, on November 2, 2004, Grimes filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See Aaron Grimes v. Sec'y, Fla. Dep't of Corr*., No. 1:04-cv-432-AW-EMT (N.D. Fla.), ECF No. 1.  Respondent moved to dismiss the petition as untimely under the federal habeas statute of limitations.  ECF No. 29.  To

overcome the time-bar, Grimes asserted that he was actually innocent based upon newly discovered evidence.  ECF No. 35 at 3-7.  In support of his actual innocence claims, Grimes submitted a sworn affidavit in which Barnum recanted his trial testimony that Grimes used a firearm to rob him. ECF No. 12 at 26-29.  Grimes also submitted affidavits from three (3) Florida prison inmates that purported to corroborate Barnum's recantation. *Id*. at 30-34.  United States Magistrate Judge Elizabeth M. Timothy recommended that the petition be dismissed as untimely because the affidavits failed to establish actual innocence.   ECF No. 42.  United States District Judge Maurice M. Paul adopted the recommendation and report, and the petition was dismissed.  ECF No. 45.

Twenty-three (23) years after the robbery, in 2019, Grimes says he encountered Jenkins in the law library at the prison where both men were incarcerated at the time.  According to Grimes, Jenkins disclosed that he had robbed Arthur and Barnum in Gainesville on December 24, 1996.  To amend his ways, Jenkins offered to provide Grimes with a sworn statement confessing to the robbery so that Grimes could prove his innocence. The following year, in 2020, Grimes received two unsolicited affidavits via prison mail, one from Barnum dated March 19, 2020, and the other from Arthur

dated August 11, 2020.  *See* ECF No. 1-2 at 23-25.  The 2020 Arthur and Barnum statements recant their trial testimony that Grimes robbed them at gunpoint and further attest that Gainesville police had pressured them to falsely testify at trial that Grimes committed the robbery.  *Id*.

Jenkins also supplied Grimes with a 2020 affidavit.  In his affidavit dated July 11, 2020, Jenkins confessed to robbing Arthur and Barnum on December 24, 1996.  ECF No. 1-2 at 22.  Jenkins further attested that Gainesville police arrested him on the night of the robbery, while Jenkins had on his person items stolen from Arthur and Barnum.  *Id*.  Rather than detain Jenkins, Gainesville police let Jenkins go as "a favor."  *Id*.

Relying on the three (3) 2020 affidavits as newly discovered evidence, Grimes moved for leave to file a second petition based on claims of actual innocence.  ECF No. 1-2 at 18-24.  In the motion, Grimes argued that the Arthur and Barnum affidavits showed that his due process rights were violated under *Giglio*, and that the Jenkins affidavit showed a due process violation under *Brady*.  The Eleventh Circuit granted Grimes leave to file a second petition, *id*. at 3-15, concluding that Grimes made a *prima facie* case for prosecutorial misconduct sufficient to support Grimes's actual innocence claims.  ECF No. 1-2 at 15.  The Court of Appeals also

appointed CJA attorney Daniel F. Daly (Mr. Daly") to represent Grimes in these proceedings. *Id*. at 49.

Eighteen months into this case, Mr. Daly moved for leave to withdraw from the representation, citing ethical concerns. ECF No. 18. Mr. Daly's ethical concerns arose after he interviewed Arthur about his 2020 affidavit, and Arthur disavowed it. ECF No. 20. The Court granted Mr. Daly's motion for leave to withdraw, ECF No. 22, and directed Grimes to file a response under penalty of perjury as to whether the 2020 affidavits were truthful. ECF No. 24. Grimes responded that "under penalty of perjury" "the affidavits he relies on are truthful to the best of his knowledge." ECF No. 26 at 2.

Because of the questionable veracity of Arthur's 2020 statements, the Court scheduled an evidentiary hearing. ECF No. 27. The Court directed Grimes, Mr. Daly, Arthur, Barnum, and Jenkins to appear at the hearing so the Court could examine the truthfulness of the 2020 statements. The federal habeas statute permits a court to conduct an evidentiary hearing if a petitioner's claim "relies on… a factual predicate that could not have been previously discovered through the exercise of due diligence; and… the facts underlying the claim would be sufficient to establish by clear and

convincing evidence that but for the constitutional error no reasonable juror would have found the petition guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A)(ii) and (B).

If the 2020 statements were true, they could provide "clear and convincing evidence" to establish that, but for the alleged *Giglio* and *Brady* violations, no reasonable juror would have found Grimes guilty of the armed robbery of Arthur and Barnum. If, however, the affidavits contained false statements, or were forged, then a fraud on the Court may have been committed.[4]

---

[4] A court may use its inherent powers to preserve the integrity of the judicial process and prevent the perpetration of fraud on the court. *See generally Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). Fraud on the court "embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Travelers Indem. Co. v. Gore,* 761 F.2d 1549, 1551 (11th Cir. 1985). The Eleventh Circuit has said that "only the most egregious misconduct," such as "fabrication of evidence by a party in which an attorney is implicated," constitutes a fraud on the court. *Morsch v. JP Morgan Chase Bank, N.A.,* 829 F. App'x 903, 905 (11th Cir. 2020 (*citing Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)). The moving party must show fraud by clear and convincing evidence. *Booker v. Dugger,* 825 F.2d 281, 283 (11th Cir. 1987). "Conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud." *Id.* at 283-84 (alterations adopted).

## II.    THE EVIDENCE BEFORE THE COURT

The Court has examined the 2020 sworn statements with the benefit of the testimony obtained during the 2022 evidentiary hearing and in consideration of the relevant 1997 trial testimony. Taken in the proper context, the Court finds that the 2020 affidavits provide no support for Grimes's actual innocence claims.

### A.    The 2020 Affidavits.

The 2020 sworn statements, if true and taken together, would support Grimes's claim that his due process rights were violated by the prosecution's alleged knowing use of perjured testimony in violation of *Giglio* (Ground One), and by the prosecution's alleged failure to provide Grimes with exculpatory evidence as required by *Brady* (Ground Two).

Grimes relies upon the Arthur and Barnum affidavits to support his *Giglio* claim.  In their affidavits, Arthur and Barnum recant their trial testimony and attest that Gainesville police pressured them to falsely testify that Grimes committed the robbery.  ECF No. 1-2 at 23-24.  Arthur and Barnum go on to say that the person who actually robbed them was "light-skinned" and that Grimes is "dark-skinned."  *Id*.   Further, Arthur and Barnum say that they lied about Grimes's having used a gun.  *Id*.  Grimes

argues that these statements support his claim that his due process rights were violated under *Giglio* because the prosecution knowingly used Arthur's and Barnum's false testimony that Grimes had robbed them at gunpoint.

Grimes's *Brady* claim is purportedly supported by Jenkins's affidavit. In the affidavit, Jenkins attests that Gainesville police arrested him on the night of the robbery and discovered that Jenkins had in his possession items stolen from Arthur and Barnum.  ECF No. 1-2 at 22.  Gainesville police, however, let Jenkins go as "a favor." *Id*. Jenkins further avers that "Aaron Grimes did not have a gun nor did he take anything from the victims.  I robbed Tellas Barnum and Quentin Arthur." *Id*.  The reason Jenkins gives for coming forward at this late date is "because an innocent man has suffered many many years for [Jenkins's] wrongdoing."  ECF No. 1-2 at 22.  Grimes argues that Jenkins's statements support his claim that his due process rights were violated under *Brady* because the prosecution failed to disclose that Jenkins was arrested on the night of the robbery while in possession of the robbery victim's stolen items.

**B.    2022 Evidentiary Hearing Testimony.**

The Court conducted an evidentiary hearing on June 27 and June 29, 2022.  ECF No. 44.  On the first day of the hearing, the Court heard testimony from Mr. Daly, Arthur, Barnum, and Grimes. Arthur and Barnum each testified that the 2020 sworn statements attributed to them were not their affidavits.  Arthur unequivocally stated that he did not author the August 11, 2020, affidavit, he did not authorize its contents, and he did not sign it.  Further, Arthur confirmed the truthfulness of his trial testimony that Grimes robbed him and Barnum at gunpoint on December 24, 1996. Arthur's testimony here is consistent with what he told Mr. Daly during their interview prior to Mr. Daly withdrawing from the case, and with what Mr. Daly testified to at the evidentiary hearing.

Barnum also testified that he, too, did not author or sign his 2020 affidavit.  Barnum said that he suffered a severe brain injury after the 1996 robbery, so his present memory of that event is murky.  Notably, however, he said with certainty that the signature and handwriting displayed on the March 19, 2020, affidavit were not his.  In light of Arthur's and Barnum's testimony that they had nothing to do with the 2020 statements attributed to them, the Court concludes that the affidavits were forgeries.

Grimes testified about how he came into possession of the forged affidavits.  Grimes said that the affidavits arrived unsolicited by him via prison mail without any explanation or accompanying letter.[5]  Grimes further testified that he had believed that Arthur and Barnum authored their statements, and that he had no idea who had forged them.  Grimes further testified that he discussed Jenkins's 2020 affidavit with Jenkins while they were housed at the same prison, and that Jenkins voluntarily agreed to provide his statement to help Grimes establish his innocence.

As for Grimes's relationship with Jenkins, Grimes testified that the men met for the first time in 2019 at the prison law library.  During their conversation at that time, Jenkins told Grimes that he had been in Gainesville on the night of the robbery (December 24, 1996). Jenkins said that he robbed Arthur and Barnum that night then fled back to the Orlando area unaware that Grimes had been arrested and charged with the crime.

---

[5] Grimes's account of how he came into possession of the Arthur and Barnum 2020 affidavits stretches credulity.   Barnum's affidavit is dated March 19, 2020; Jenkins's affidavit is dated July 11, 2020; and Arthur's affidavit is dated August 11, 2020.  ECF No. 1-2 at 22-24.  On August 17, 2020, Grimes filed his request with the Eleventh Circuit for leave to file a second petition, relying upon the 2020 affidavits.  It makes no sense that affidavits from Arthur and Barnum would appear unsolicited nearly twenty-five (25) years after the robbery without of coordination by or request from Grimes, his family members, or Jenkins.

As a way of "making things right", Grimes said that Jenkins offered to provide Grimes with a sworn statement confessing to the robbery.

On the second day of the hearing, Jenkins and Grimes testified. Jenkins testified that his 2020 affidavit was authentic (unlike the Arthur and Barnum affidavits). Jenkins said that he dictated the affidavit to a law library clerk who typed it up for him; that the affidavit displayed his true signature; and that the contents of the affidavit were truthful. Jenkins also testified that he and his girlfriend lived in Orlando, Florida around the time of the robbery. On December 24, 1996, the pair travelled by car to Gainesville to visit the girlfriend's family who lived there. Jenkins further testified that he, and he alone, committed the robbery, and that he and his girlfriend departed Gainesville after the robbery to evade police.

### C.   1997 Trial Testimony.

At trial, Barnum and Arthur each testified that two perpetrators— Grimes and an unknown "light-skinned guy"—committed the armed robbery on December 24, 1996. Barnum testified that Grimes pointed a gun at Arthur, while the "light-skinned guy" grabbed Barnum behind the neck and choked him. ECF No. 11-1 at 144. The light-skinned man then searched Barnum for drugs. *Id*. Finding none, the man pulled off Barnum's

Georgetown University basketball jacket, saying, "Give me your jacket. Give me your jacket." *Id.*  As the man pulled off Barnum's jacket, Grimes approached and asked, "What's happening?" then punched Barnum in the jaw. *Id.*  Barnum also testified that he told police on the night of the robbery that Grimes was one of the men who robbed him, and he testified that he had identified Grimes from a police photo-lineup. ECF No. 11-1 at 149. Barnum also identified Grimes in open court as the person who pulled the gun and robbed him and Arthur. *Id*.

Arthur also testified at trial that two assailants were involved in the robbery.  He testified that Grimes pointed a chrome semi-automatic hand gun with a white bottom at him, took $20.00 from his back pocket, and snatched a Mickey Mouse necklace from around his neck.  ECF No. 11-1 at 164-65. Grimes then ordered Arthur to take off his shoes, which Arthur refused to do.  *Id*. at 165.  Instead, Arthur walked away, and Grimes said, "Get out of here before I smoke you."  *Id*.  Arthur then turned around and saw the two assailants take Barnum's jacket and hit Barnum in the face. *Id*. at 166. Afterwards, Grimes and the other man got into a car (possibly driven by a female) and drove away. *Id*.

## III.   LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year limitations period during which a state prisoner can bring a federal habeas corpus petition.  28 U.S.C. § 2244(d)(1). The statute of limitations begins to run from the latest of four events, one of which is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Petitions that are time-barred by the AEDA may nonetheless be filed where the petitioner claims "actual innocence."  *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) (holding that a plea of actual innocence can overcome habeas statute of limitations and that timing is a factor in evaluating the reliability of petitioner's proof of innocence).  An "actual innocence" claim arises in three different contexts in the Eleventh Circuit.  *Rozelle v. Sec'y, Fla. Dep't of Corr.,* 672 F.3d 1000 (11th Cir. 2012).  Grimes's claims fall under the third context.[6]  In such a

---

[6] The Eleventh Circuit explains the first two types of actual innocence claims as follows:

In the first context, a petitioner's actual innocence is itself the constitutional basis of the habeas petition. *See Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993) (holding that no federal habeas relief is available for freestanding, non-capital claims of

situation, "a habeas petitioner claims his actual innocence should serve as

a gateway to consideration of constitutional claims time-barred under

AEDPA's one-year limitation period." *Rozelle*, 672 F.3d at 1011 (*citing* 28

U.S.C. § 2244(d); *Johnson*, 513 F.3d at 1333-34; *Arthur v. Allen*, 452 F.3d

---

actual innocence); *Jordan v. Sec'y, Dep't of Corr.,* 485 F.3d 1351, 1356 (11th Cir. 2007) (same)…. In the other two types of actual innocence claims, the petitioner's assertion of innocence is not itself a freestanding claim, but merely serves as a "gateway" to get the federal court to consider claims that the federal court would otherwise be barred from hearing. "To successfully plead actual innocence, a petitioner must show that his conviction resulted from 'a constitutional violation.'" *Johnson v. Fla. Dep't of Corr.,* 513 F.3d 1328, 1334 (11th Cir. 2008) (quoting *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995)). In the second type, a petitioner's actual innocence serves as a gateway to consideration of constitutional claims procedurally defaulted in state court, such as failure to exhaust state remedies, failure to satisfy state filing requirements, et cetera. *See Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir. 2001) (explaining that claim of actual innocence must be supported by "reliable evidence not presented at trial" (internal quotation mark omitted)); *see also Schlup,* 513 U.S. at 324, 115 S.Ct. at 865 (holding that for habeas court to consider procedurally barred constitutional claims, petitioner must present "new reliable evidence" of actual innocence). To bypass such a procedural bar, a petitioner must show *either* (1) cause and prejudice *or* (2) a miscarriage of justice, or "actual innocence." *Schlup,* 513 U.S. at 314-15, 115 S.Ct. at 860-61. The actual innocence exception to the procedural bar is not meant to remedy ordinary errors in criminal judgments but is narrowly reserved for only "fundamental miscarriage[s] of justice." *Id.* at 315, 115 S.Ct. at 861. To overcome procedural default through a showing of actual innocence, the petitioner must present "reliable evidence ... not presented at trial" such that "it is more likely than not that no reasonable juror would have convicted him of the underlying offense." *Johnson,* 256 F.3d at 1171 (quoting *Schlup,* 513 U.S. at 324, 327, 115 S.Ct. at 865, 867 (internal quotation mark omitted)).

*Rozelle*, 672 F.3d at 1011. In this case, Grimes's claims fall outside of the first two types of "actual innocence" claims.

1234, 1244-46 (11th Cir. 2006)).  This exception for AEDPA untimeliness

"require[s] the petitioner (1) to present new reliable evidence ... that was

not presented at trial, … and (2) to show that it is more likely than not that

no reasonable juror would have found petitioner guilty beyond a reasonable

doubt in light of the new evidence." *Rozelle*, 672 F.3d at 1011 (citations and

internal quotation marks omitted). Further, "[a] federal habeas court, faced

with an actual innocence gateway claim, should count unjustifiable delay on

a habeas petitioner's part, not as an absolute barrier to relief, but as a

factor in determining whether actual innocence has been reliably shown."

*McQuiggin*, 569 U.S. at 387, 133 S.Ct. at 1928.

## IV.    DISCUSSION

In this case, the AEDPA's one-year statute of limitations bars

Grimes's Petition unless he can establish actual innocence.

### A.    Grimes's Petition is time-barred under the AEDPA.

According to Grimes, he first learned that Jenkins was the "real

perpetrator" from their law library conversation which took place no later

than October 27, 2018.[7]  *See McQuiggin*, 569 U.S. at 388-89, 133 S.Ct. at

---

[7] A handwritten affidavit from Jenkins submitted in support of Grimes's state court case is dated October 27, 2018.  Respondent's Exhibit No. 7.  In his letter to the state court dated January 1, 2019, Grimes says that he "received a sworn affidavit from the person that committed this crime 23 years ago," and then asking how to get this "Newly

1929 ("[i]f a petition alleges newly discovered evidence… the filing deadline is one year from 'the date on which the factual predicate of the claim or claims presented could have been discovered through the existence of due diligence.'" (quoting 28 U.S.C. § 2244(d)(1)(D)).  As Respondent correctly points out, because Grimes did not properly file applications for post-conviction or other collateral relief, time began to run unabated from the date Grimes first learned about Jenkins's participation in the robbery, which Grimes alleged to be no later than October 27, 2018.  Time to file the instant petition thus expired in October of 2019.  Grimes filed his request for leave to file a second petition on August 17, 2020, ECF No. 1-2 at 16, and he filed his second petition on December 8, 2020, ECF No. 1. Thus, Grimes's Petition is time-barred by the AEDPA's one-year statute of limitations.

---

Discovered Evidence" considered by the court.  ECF No. 12-3 at 307. Consequently, Grimes was aware of Jenkins's purported confession to the robbery no later than October 27, 2018.

**B.    Grimes has not provided new reliable evidence to support his actual innocence claims, nor has he established an underlying constitutional violation, so federal habeas relief is unavailable.**

Grimes argues that he is entitled to overcome the AEDPA's time-bar because the 2020 affidavits show that he is actually innocent.  Upon careful review of all the evidence before the Court, the Court concludes that the affidavits are not reliable evidence to support an actual innocence claim.  Moreover, Grimes has failed to establish an underlying constitutional violation, so federal habeas relief is unavailable.

*1.    Grimes has no evidence to support his* Giglio *claim.*

To support his *Giglio* claim (Ground One), Grimes relies on the 2020 statements of Arthur and Barnum that police pressured them to falsely testify at trial that Grimes robbed them at gunpoint.  Because Arthur and Barnum disavowed those statements, Grimes has no *Giglio* claim.

In *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935), the Supreme Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice." In *Napue v. Ilinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959), the Supreme Court explained, "[t]he same result obtains when the State, although not

soliciting false evidence, allows it to go uncorrected when it appears."

"When the 'reliability of a given witness may well be determinative of guilt

or innocence,' nondisclosure of evidence affecting credibility falls within this

general rule." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766,

31 L.Ed.2d 104 (1972) (quoting *Napue,* 360 U.S. at 269, 79 S.Ct. at 1177).

Because the Arthur and Barnum statements were forged, Grimes

cannot rely upon them to support a *Giglio* claim.  Without Arthur and

Barnum's 2020 statements, no evidence (let alone reliable evidence)

supports Grimes's assertion in Ground One that law enforcement

pressured Arthur and/or Barnum to falsely testify that Grimes robbed them

at gunpoint. Accordingly, no gateway claim of actual innocence exists.

Ground One is thus time-barred and due to be dismissed.

> 2.    *Grimes's evidence to support his* Brady *claim is not credible or reliable.*

To support his *Brady* claim (Ground Two), Grimes relies on Jenkins's

2020 sworn statements that (1) Jenkins committed the robbery alone; and

(2) law enforcement knew Jenkins committed the robbery as they caught

him red-handed; yet law enforcement failed to disclose this exculpatory

evidence to Grimes.  The Court finds that neither of Jenkins's statements

upon which Grimes relies is credible or reliable.

To establish a violation of *Brady,* Grimes must demonstrate:

(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence) ...; (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence ...; (3) that the prosecution suppressed the favorable evidence ...; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different[.]

*Wright v. Hopper,* 169 F.3d 695, 701 (11th Cir. 1999) (citation omitted).

For *Brady* purposes, evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (citation omitted).

"A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

For the following reasons Jenkins' 2020 statements do not come close to establishing a *Brady* violation.  First, Jenkins' testimony that he, and he alone, robbed Arthur and Barnum on December 24, 1996, is not credible as it directly contradicts the trial testimony of both victims that two (2) men participated in the robbery and that one of those men was Grimes.

 Second, Jenkins' account of what transpired after the robbery is not consistent.  In his 2020 affidavit, Jenkins says that Gainesville police

apprehended him on the night of the robbery and "took from [his] possession a starter basketball jacket and a beeper that [Jenkins] took from one of the victims" but "let [Jenkins] go… [as] a favor."  ECF No. 1-2 at 22. At the 2022 evidentiary hearing, however, Jenkins testified that he and his girlfriend left town after the robbery to evade police (which seems more likely).[8]  Simply put, Jenkins's 2020 statement that police apprehended him on the night of the robbery (while in possession of the stolen items) but let him go is not credible on its face. Further, the 2020 statement is inconsistent with Jenkins's 2022 testimony that he left town after the robbery to avoid police. Consequently, Jenkins's 2020 statements, critical to Grimes's *Brady* claim, are neither credible nor reliable.

Additionally, while Jenkins's statement that he committed the December 24, 1996, robbery is consistent with other trial evidence, the Court finds Jenkins's statement that he committed the robbery alone is not credible.  The record establishes that two African American men—Grimes and an unidentified "light-skinned" man— robbed Arthur and Barnum on December 24, 1996.  In his court papers, Grimes identifies Jenkins as the

---

[8] Jenkins's 2022 testimony that he left town shortly after the robbery is consistent with his statement in the October 27, 2018, affidavit that he left town with his girlfriend because he "heard someone say the police was coming."  Respondent's Ex. 7 at 1.

"light-skinned male" who committed the robbery.  *See* ECF No. 1-2 at 34.

Further, Jenkins testified that he encountered Grimes near the location of

the robbery, on the night of the robbery, around the time the robbery

occurred.  Jenkins also testified that he had possession of Arthur's stolen

Mickey Mouse necklace.  According to Arthur, it was Grimes who snatched

his necklace, not the "light-skinned" man.  Thus, if Grimes took the

necklace from Arthur, as the victims testified at trial, but Jenkins later had

possession of it, this evidence is consistent with the conclusion that Grimes

and Jenkins committed the robbery together.

　　　Jenkins' 2020 statement also is not credible because on the one

hand Jenkins says that "Aaron Grimes did not have a gun nor did he take

anything from the victims," ECF No. 1-2 at 22,[9]  and on the other hand says

he alone committed the robbery and that Grimes was not even there. Only

a person at the robbery scene would be able to say whether Grimes had a

gun or not, or whether Grimes took anything from the victims.

　　　In sum, if Jenkins was Grimes's accomplice, his confession that he

robbed Arthur and Barnum does nothing to establish that Grimes is actually

---

[9] Obviously, Jenkins statement that Grimes did not have a gun is not credible.  Barnum
and Arthur both testified that Grimes pointed a gun at them during the robbery.  ECF
No. 11-1 at 144, 164-65. Moreover, Arthur described the gun as a .25 caliber chrome
semi-automatic with a white bottom.  *Id*. at 164-65.

innocent. Rather, the confession (and its surrounding circumstances) suggests at most that Jenkins was the other man who participated in the robbery that night.

Because no new reliable evidence supports Grimes's *Brady* claim (Ground Two), Grimes has no gateway claim of actual innocence. Ground Two is thus time-barred and due to be dismissed.

3.    *Grimes failed to establish an underlying constitutional violation, so federal habeas relief is not available.*

In view of the above, Grimes failed to establish any underlying constitutional violation under *Giglio* or *Brady*, making federal habeas relief unavailable. *See Herrera*, 506 U.S. at 400, 113 S.Ct. at 860 (holding that no federal habeas relief is available for freestanding, non-capital claims of actual innocence); *Jordan,* 485 F.3d at 1356 (same). *Johnson,* 513 F.3d at 1334 ("To successfully plead actual innocence, a petitioner must show that his conviction resulted from a constitutional violation.") (citation and internal quotation marks omitted).[10]

In sum, Grimes has presented no new, reliable evidence not presented at trial that shows that it is more likely than not that no

---

[10] The Court need not address whether Grimes's delay in asserting his actual innocence claim was justifiable under *McQuiggin*, because the 2020 affidavits are not new reliable evidence.

reasonable juror would have found Grimes guilty beyond a reasonable doubt. *See Rozelle*, 672 F.3d at 1011 (citations and internal quotation marks omitted). In the absence of any gateway actual innocence claim, Grimes's Petition is time-barred under AEDPA's one-year limitations period. Accordingly, the Petition is due to be dismissed.

## V.    CERTIFICATE OF APPEALABILITY

For a petitioner to obtain a certificate of appealability, he must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing requires that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (citation and internal quotation marks omitted). And, where a petition is denied on procedural grounds, he "must show not only that one or more of the claims he has raised presents a substantial constitutional issue, but also that there is a substantial issue about the correctness of the procedural ground on which the petition was denied." *Gordon v. Sec'y, Dep't of Corrs.*, 479 F.3d 1299, 1300 (11th Cir. 2007) (per curiam) (citations omitted). "A 'substantial

question' about the procedural ruling means that the correctness of it under the law as it now stands is debatable among jurists of reason." *Id. (citing Slack,* 529 U.S. at 484, 120 S.Ct. at 1604).

## VI.   CONCLUSION

For the reasons discussed above, it is respectfully **RECOMMENDED** that the Second Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, should be **DISMISSED as time-barred under 28 U.S.C. § 2244(d)(1)(D)**.  Petitioner has failed to provide new, reliable evidence to establish his actual innocence and thus cannot overcome the federal habeas one-year statute of limitations.  Furthermore, because reasonable jurists would not find the dismissal of Petitioner's § 2254 Petition debatable, a Certificate of Appealability should be **DENIED**.

Finally, it is further **RECOMMENDED** that the affidavits relied upon to support the Petition should be **REFERRED** to the United States Attorney for the Northern District of Florida for investigation and possible perjury prosecutions.

**IN CHAMBERS** in Gainesville, Florida this 26th day of August 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.